### MONDAKOTA GAS CO. v. MONTANA–DAKOTA UTILITIES CO. et al.

#### No. 1217.

United States District Court, D. Montana, Billings Division. Nov. 1, 1951.

Guthrie, Darling & Shattuck, and Milo V. Olson, all of Los Angeles, Cal., Leif Erickson, Helena, Mont., for plaintiff.

John C. Benson and Armin M. Johnson, Minneapolis, Minn., Coleman, Jameson & Lamey, and Cale Crowley, all of Billings, Mont., for defendants.

PRAY, Chief Judge.

The above-entitled cause is before the court on the motion for summary judgment by defendant, Montana-Dakota Utilities Co., pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C., seeking dismissal of the action on the ground that there is no genuine issue as to any material fact and that the moving defendant is entitled to a judgment as a matter of law, or if summary judgment is not rendered in defendant's favor upon the whole case or for all of the relief asked and a trial is considered necessary, that the court determine what material facts are actually in good faith controverted.

Plaintiff's reply to defendant's motion for summary judgment stated that a motion for a summary judgment cannot be granted where there are genuine issues as to material facts to be determined, and thereupon set forth alleged genuine issues as to material facts on which evidence will be required and on which a trial by jury is deemed necessary.

Plaintiff contends that there is a conflict as to material issues raised by the affidavits filed herein by defendant on its motion for a summary judgment and by the affidavits filed in response thereto on behalf of plaintiff, and also as shown by the complaint on file herein, the depositions of the officers of plaintiff and the depositions of the officers of defendant; that under Rule 56 of the Federal Rules of Civil Procedure, such genuine issues must be determined at the time of trial and not in a motion for summary judgment.

Plaintiff's counter-motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, proposes that a summary judgment interlocutory in character be rendered on the issues of liability alone, and that by said interlocutory judgment it be determined that defendants are liable to plaintiff and leave for determination as the sole issue at the time of trial the question of the amount of damages.

During the period from August 21, 1935, to the present time the Leasing Act, as amended, was in full force and effect. The language of the statute is clear that administrative determination in accordance with the specific requirements of the Act must be made by the Secretary of the Interior with reference to "such proportionate amounts as the Secretary of the Interior may, after a full hearing with due notice thereof to the interested parties and a proper finding of facts, determine to be reasonable". 30 U.S.C.A. § 185. It is admitted by plaintiff that it did not make application or request to the Secretary of the Interior for such a determination.

"§ 189. Rules and regulations; rights of States not affected. The Secretary of Interior is authorized to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of sections 181–194, 201, 202–208, 211–214, 223–229, 241, 251, and 261–263 of this title, also to fix and determine the boundary lines of any structure, or oil or gas field, for the purposes thereof. * * *" 30 U.S.C.A. § 189.

It appears that the 1933 rates that were filed were found to be unreasonable by the Secretary of the Interior, who required that new rates be filed; that new rates were filed and became effective March 2nd, 1937; that those rates were attacked in this court (by the predecessor company of the plaintiff) by the John Wight Company; that occurred in the action of Montana Eastern Pipe Line Company v. Montana-Dakota Utilities Company, D.C., 26 F.Supp. 284, to determne whether or not the rates of 1937 filed with the Secretary of Interior were reasonable, and this court found under the evidence before it that those rates were reasonable rates. (September 15, 1938).

That pursuant to the Natural Gas Act, June 21, 1938, 15 U.S.C.A. § 717 et seq., the Federal Power Commission issued its Order No. 53, dated July 5th, 1938, requiring the Montana-Dakota Utilities Company to file rates on its pipe line as it then existed; in compliance with that order rate schedules were filed on August 24th, 1938, which schedules were designated by the Federal Power Commission as 3–G and 4–G.

That the rates in schedules 3–G and 4–G were the same rates that were filed with the Secretary of the Interior in 1937, (and were not determined by the Secretary of the Interior as unreasonable) and were the same rates that were involved in the action before this court in 1937 wherein it was found that those rates were reasonable rates. 26 F.Supp. 284.

That in December of 1941 the Mondakota Development Company, (predecessor of the Mondakota Gas Company) filed a rate complaint with the Federal Power Commission; that in 1942 the Federal Power Commission instituted its own rate proceeding in connection with the rates in schedules 3–G and 4–G; that the matter was dormant for a long period of time, and in 1944 the Federal Power Commission consolidated the two matters, the petition of the Wight Company (Mondakota Development Company—Mondakota Gas Company) and its own order, and hearing was held on the matter in Minneapolis, Minnesota in May of 1944; there was no decision by the Federal Power Commission until March 22, 1946, at which time the commission found, among other things, that the rates were unreasonable, and required that the utility company file a new schedule of rates by June 1, 1946; shortly thereafter on petition for rehearing by the Montana-Dakota Utilities Company the Federal Power Commission stayed its own order and granted the motion for rehearing in part; on January 27, 1947, the commission confirmed its previous ruling and held the rates were unreasonable and required new rates.

That the utility company appealed the orders of the commission of March 22, 1946, and January 27, 1947, to the Circuit Court of Appeals, Eighth Circuit, and on August 4, 1948, that court affirmed the Federal Power Commission ruling. 169 F.2d 392. That Writ of Certiorari was denied by the Supreme Court on October 25, 1948, see 335 U.S. 853, 69 S.Ct. 82, 93 L.Ed. 401, and the Montana-Dakota Utilities Company filed new schedules of rates on April 2, 1949.

The decision of the Federal Power Commission, dated March 22, 1946, in part provides: "In accordance with the provisions of the Natural Gas Act, and this Commission's Order No. 53, issued pursuant to such Act, the respondent on August 24, 1938, filed with this Commission the two identical rate schedules which had theretofore been filed with the Department of the Interior. Such schedules were thereupon designated by the Commission's files as Montana-Dakota Utilities Co. Rate Schedules FPC Nos. 3–G and 4–G. According to their terms, such schedules became effective October 27, 1933 and March 2, 1937, respectively.

That the commission made the further finding:

"The Provisional Rules of Practice and Regulations under the Natural Gas Act, with approved forms, effective July 11, 1938, as amended from time to time by orders of the Commission provide the only means by which filed rate schedules may be altered, changed or canceled. The Respondent received actual notice of all such rules, regulations and orders."

"Montana-Dakota Utilities Co. Rate Schedules FPC Nos. 3–G and 4–G since the date of filing have remained continuously on file with the Commission as Respondent's demanded rates for the common carrier transportation service therein specified. Such rate schedules have not been amended, altered, changed or canceled."

That the Natural Gas Act specifically provides: "Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating there-to, except after thirty days' notice to the Commission and to the public." 15 U.S. C.A. § 717c(d).

In support of and in opposition to the motions submitted in this case by counsel for the respective parties this court has had a record to consider of approximately 2500 pages. Unlike the case referred to by counsel as pending in the federal court in Minnesota, involving similar issues and some of the same parties, the instant case, and motions thereunder, were submitted to the court on voluminous evidence presented by both sides through affidavits and depositions. Some phases of this controversy were before this court in 1937, and for many years since then it has been going on before some court, bureau or department of the government. Aside from the court's own opinion as to what should be done at this time, it would seem apparent that the vital questions presented in this case need the consideration of a tribunal having finality of decision before the parties enter upon a limitless field of litigation and expense. The court will not dwell to any greater extent upon the history of litigation preceding this action, which has been read by the court, together with the pleadings, affidavits, depositions and briefs of counsel, and especially the authorities cited and the interpretation thereof by counsel.

One of the questions to be considered is whether the plaintiff exhausted its administrative remedies in order to possess the qualifications necessary to maintain its action. It appears to be an established fact that plaintiff has never applied for or obtained from the Secretary of the Interior a determination under the Leasing Act, Title 30, U.S.C.A. § 185, of the proportionate amount of the capacity of the pipe line in question which plaintiff might be permitted to utilize.

██ During the period from August 31st, 1935 to the present time the Leasing Act, as amended, was in full force and effect. The language of the statute is unambiguous and clear that administrative determination in accordance with the specific requirements of the Act must be made by the Secretary of the Interior with refer-

ence to "such proportionate amounts as the Secretary of the Interior may, after a full hearing with due notice thereof to the interested parties and a proper finding of facts, determine to be reasonable". It is admitted by plaintiff that it did not make application or request to the Secretary of the Interior for such a determination. The following citation seems to be applicable: "(1) This finding of fact by the Secretary is a vital point upon which plaintiff's case must stand or fall. It is too well settled to require citation of authority that the determination by the Secretary of a question of fact, in a matter within his jurisdiction, is binding upon the courts. Nor will the courts entertain an inquiry as to the extent of his investigation and knowledge of the points decided, or as to the methods by which he reached his determination." De Cambra v. Rogers, 189 U.S. 119, 23 S.Ct. 519, 47 L.Ed. 734; Wann v. Ickes, 1937, 67 App.D.C. 291, 92 F.2d 215, 217.

It has been held that the court will not grant relief in the first instance if an adequate administrative remedy is available. It is said to be fundamental to federal regulatory legislation that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638; Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; Mitchell Coal Co. v. Penn. R. Co., 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472; Armour & Co. v. Alton R. Co., 312 U.S. 195, 61 S.Ct. 498, 85 L.Ed. 771; Great Northern Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 42 S. Ct. 477, 66 L.Ed. 943. The latter case for comparison with the others cited.

How could the plaintiff expect to establish his cause of action in a federal court if it failed to exhaust its administrative remedies and regulatory requirements to enable it to transact the business described in the complaint? Now the question is, does it appear from the law and authorities cited that such would constitute an indispensable prerequisite to the commencement of an action for judicial relief such as is contemplated by this action? What if no space were found in the pipe lines to satisfy plaintiff's demands, or that defendant be called upon to alter or cancel contracts with others to accommodate plaintiff? Plaintiff suggests that the duty rested upon defendant to make such application to the Secretary, which at least is a partial admission that such a step should have been taken, but the plaintiff knew his own plans and what accommodations would be required from defendant, which information was not available to defendant, consequently in the court's view the duty rested upon plaintiff, as the party chiefly interested, to find out what, if any, space would be available for its use in defendant's pipe lines.

It appears also to be a fact, as asserted by defendant, that while plaintiff is a natural gas company, under its own statement, as defined in the Natural Gas Act, it "has never applied for or obtained a certificate of public convenience and necessity under Section 7(c) of the Natural Gas Act, 15 U.S.C.A. § 717f(c), authorizing it to enter the market served by Montana-Dakota Utilities Company, or authorizing it to operate any facilities or to transport or ship natural gas to any customer."

It is contended that plaintiff never gave defendant information as to the nature of any proposed shipment of gas it wanted to make, or as to quantity or place of origin or destination, or any information as to the proposed maximum daily shipment it desired to make or any other necessary and pertinent facts concerning any gas shipments it was desirous of making, and that no gas was ever tendered defendant, Montana-Dakota Utilities Co., by plaintiff for shipment in any of the former's pipe lines. Plaintiff claims it was unable to do business with defendant because of the alleged existence of unreasonable rates, which had never been tested by plaintiff. Plaintiff could have obtained a certificate of convenience and necessity and also the decision of the Secretary of the Interior as to amount of gas that could be accepted by the pipe line, and then could have made a test of the rates by offering gas for shipment; and, if as a result of the test, it

should have determined that the rates were unreasonable, plaintiff could then have applied for an interim rate to continue during the extended period of rate litigation, and thereby could have continued shipments of gas during that period without interruption.

The court is convinced from the arguments of counsel and authorities cited that the schedule of rates on file by defendant since 1938 were to be accepted as the regularly filed and lawful rates until they were superceded by the new rates that went into effect April 2nd, 1949; the defendant could not alter or change those rates under the statute. 15 U.S.C.A. 717c. It would seem that the Federal Power Commission had no authority to make findings as to the unreasonableness of past rates, and that its authority in this respect is limited solely to the determination of rates to be in force and to apply to future transactions.

The better reasoning as to interpretation and application of the recent decision of the Supreme Court in Montana-Dakota Utilities Company v. Northwestern Public Service Company, 341 U.S. 246, 71 S.Ct. 692, 695, 95 L.Ed. 912, would seem to require acceptance of that decision as decisive of the instant case. The court has read and re-read that case, and endeavored carefully to analyze the language of that decision, aided by the able arguments of counsel for both parties, and has been unable to find authority for either court or commission to determine reasonableness of past rates. It was held there that plaintiff could "claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms."

In the majority opinion, in the case above cited, the following statement explanatory of the court's division appears: "The entire Court is agreed that the judgment rendered by the District Court cannot stand and all agree that it cannot adjudicate the issues that plaintiff tendered to it. We disagree only as to the consequences of the disability. The majority believe the federal court should dismiss the complaint. A minority urges that we should direct the District Court to refer issues to the Federal Power Commission."

In the dissenting opinion appears this statement: "Despite the unqualified statutory declaration that unreasonable rates are unlawful, we think it clear that Congress did not intend either court or Commission to have the power to award reparations on the ground that a properly filed rate or charge has in fact been unreasonably high or low. If that were all the complaint before us showed, we would agree that recovery of damages in a civil action would not be an appropriate remedy, and that the complaint should have been dismissed."

There are other pertinent statements in the last quoted decision which seem to have direct application here, such as the following: "If the court is presented with a case it can decide but some issue is within the competence of an administrative body, in an independent proceeding, to decide, comity and avoidance of conflict as well as other considerations make it proper to refer that issue. But we know of no case where the court has ordered reference of an issue which the administrative body would not itself have jurisdiction to determine in a proceeding for that purpose. The fact that the Congress withheld from the Commission power to grant reparations does not require courts to entertain proceedings they cannot themselves decide in order indirectly to obtain Commission action which Congress did not allow to be taken directly. There is no indication in the Power Act that that was Congress' intent. * * *

"Under such circumstances, we conclude, that, since the case involves only issues which a federal court cannot decide and can only refer to a body which also would have no independent jurisdiction to decide, [we] must decline the case forthrightly rather than resort to such improvisation.

"The judgment below is affirmed upon the ground that the petitioner has not established a cause of action."

And again from the same source: "We have seen that that Act (Federal Power Act) does not authorize the Commission to award reparations to those subjected to

unreasonable rates. The Act likewise does not afford to the Commission the authority conferred on administrative agencies under other regulatory statutes to award damages to those injured by violations of the Act. Compare Act of February 4, 1887, § 9, 24 Stat. 382, 49 U.S.C. § 9, 49 U.S.C.A. § 9; Act of August 15, 1921, § 309(e), 42 Stat. 166, 7 U.S.C. § 210(e), 7 U.S.C.A. § 210(e). The Power Act, it is true, does give the Commission authority to look into past rates in order to determine whether the Act has been violated. § 307(a), 49 Stat. 856, 16 U.S.C. § 825f(a), 16 U.S.C.A. § 825f(a). See Atlantic Coast Line R. Co. v. State of Florida, 295 U.S. 301, 312, 55 S.Ct. 713, 717, 79 L.Ed. 1451. But such an inquiry cannot be made the basis for an administrative award of damages to the victims of the violations. Again, the Commission may, as the Government suggests, have power under the omnibus provisions of § 309 to vacate its approval of a rate when approval has been obtained by fraud. 49 Stat. 858, 16 U.S.C. § 825h, 16 U.S.C.A. § 825h. But this does not authorize the Commission to fix rate orders retrospectively. The Commission may establish rates only 'to be thereafter observed and in force.' § 206(a), 49 Stat. 852, 16 U.S.C. § 824e(a), 16 U.S.C.A. § 824e(a)."

Another quotation from the majority opinion reads: "But the problem is whether it is open to the courts to determine what the reasonable rates during the past should have been. The petitioner, in contending that they are so empowered, and the District Court, in undertaking to exercise that power, both regard reasonableness as a justiciable legal right rather than a criterion for administrative application in determining a lawful rate. Statutory reasonableness is an abstract quality represented by an area rather than a pinpoint. It allows a substantial spread between what is unreasonable because too low and what is unreasonable because too high. To reduce the abstract concept of reasonableness to concrete expression in dollars and cents is the function of the Commission. It is not the disembodied 'reasonableness' but that standard when embodied in a rate which the Commission accepts or deter-

mines that governs the rights of buyer and seller. A court may think a different level more reasonable. But the prescription of the statute is a standard for the Commission to apply and, independently of Commission action, creates no right which courts may enforce."

■ It seems clear that in view of the decisions, statutes and regulations considered and accepted by the court the plaintiff has failed to state a cause of action, and being duly advised and good cause appearing therefor, in the opinion of the court the defendant's motion should be granted and the action dismissed and such is the order of the court herein. Exceptions to the ruling of the court are allowed counsel.