John WIGHT and Mondakota Gas Company, a corporation, Appellants,

v.

MONTANA–DAKOTA UTILITIES CO., a corporation, Appellee.

No. 16736.

United States Court of Appeals Ninth Circuit.

Jan. 17, 1962.

Fred G. Huntington, E. K. Cheadle, Billings, Mont., Milo V. Olson, Los Angeles, Cal., for appellants.

Arthur F. Lamey, Billings, Mont., John C. Benson, Armin M. Johnson, Minneapolis, Minn., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and FOLEY, District Judge.

FOLEY, District Judge.

Montana-Dakota Utilities Co., a corporation, appellee here, filed its complaint in the United States District Court for the District of Montana against John Wight, E. A. Wight and Mondakota Gas Company, a corporation, defendants. The complaint set forth five causes of action and jurisdiction of each is based upon diversity of citizenship and the requisite amount in controversy.

The complaint charged appellants with violation of a covenant and malicious prosecution in prosecuting two cases, namely: McClellan, Trustee of Capital Gas Corporation, and John Wight v. Montana-Dakota Utilities Co., U.S.D.C.Minn., 104 F.Supp. 46, hereinafter referred to as McClellan case; and Mondakota Gas Company v. Montana-Dakota Utilities Co., U.S.D.C.Mont., 103 F.Supp. 666, appeal dismissed 9 Cir., 194 F.2d 705, hereinafter referred to as Mondakota case.

Separate answers were filed: That of Mondakota Gas Company which, after certain admissions and denials, asserted seven counterclaims; and the separate answer of John Wight which contained five counterclaims.

From the notice of appeal it appears that appellants John Wight and Mondakota Gas Company appeal from the judgment of Judge Murray entered September 8, 1959, granting plaintiff's motion to dismiss the first counterclaim of defendant Mondakota Gas Company and the first counterclaim of defendant John Wight and dismissing said counterclaims without leave to amend, and, further, granting plaintiff's motion for summary judgment as to the second, third, fourth, fifth, sixth and seventh counterclaims of Mondakota Gas Company and the second, third, fourth and fifth counterclaims of John Wight and dismissing all of said counterclaims upon the ground that there is no genuine issue as to any material fact in any of said counterclaims, and that plaintiff is entitled to judgment of

dismissal of said counterclaims as a matter of law.

Judge Murray's Order and Memorandum preceding the entry of the judgment appealed from provides us with a comprehensive statement of the nature of the controversy with which we are dealing and gives us for our consideration the reasoning resulting in the conclusions reached. The Order and Memorandum, after the entitlement of court and cause, is as follows:

## "ORDER AND MEMORANDUM

"Plaintiff filed a Motion to Dismiss the First Counterclaim of Mondakota Gas Company and John Wight and for summary judgment of dismissal as to all other counterclaims of Mondakota Gas Company and John Wight. In the oral argument and/or in their brief, counsel for counterclaimants have conceded that the first, second and third counterclaims of Mondakota Gas Company and the first counterclaim of John Wight were vulnerable to the motion and that the second counterclaim of John Wight was not pressed, which leaves for consideration the fourth, fifth, sixth and seventh counterclaims of Mondakota Gas Company and the third, fourth and fifth counterclaims of John Wight.

"Mondakota Gas Company Counterclaims

"Of the remaining four counterclaims of Mondakota Gas Company the fourth and sixth are practically identical and the fifth and seventh are practically identical, the fourth and sixth seeking damages for the alleged failure of Montana Dakota Utilities Co. to operate its pipelines as a common carrier, and the fifth and seventh seeking damages for alleged violations by Montana Dakota Utilities Co. of the anti-trust laws. The only difference between the fourth and sixth counterclaims is that the fourth contains allegations in paragraph (6) thereof with reference to the release obtained by Montana Dakota Utilities Co. in 1939, whereas such allegations are omitted from the sixth counterclaim. Likewise, the fifth counterclaim contains allegations with reference to said release, whereas, such allegations are absent from the seventh counterclaim. Since Mondakota is not a party to the release and was not even in existence at the time it was executed and is not bound by it, the allegations in the fourth and fifth counterclaims with reference to it add nothing, and mean nothing, and are merely surplusage.

"The principal ground of Montana Dakota Utilities Co.'s motion for summary judgment on these four counterclaims is that they have been previously adjudicated in this court in the case of Mondakota Gas Co. vs. Montana Dakota Utilities Co., et al., 103 F.Supp. 666. The issues and parties in that case were identical with the issues and parties involved in the counterclaims under consideration, and this court, acting through Judge Pray granted summary judgment in favor of Montana Dakota Utilities Co. and against Mondakota. Mondakota's appeal in that case was dismissed by the Court of Appeals without consideration on the merits because the filing fee for the notice of appeal was not timely paid (194 F.2d 705), and certiorari was denied by the Supreme Court. Thereafter, however, in Parissi vs. Telechron Inc., 346 [349] U.S. 46, [75 S.Ct. 577, 99 L.Ed. 867], the Supreme Court reversed the Court of Appeals for the Second Circuit [Parissi v. Foley, 203 F.2d 454] which had dismissed an appeal on facts similar to those in the Mondakota case, and disapproved the decision of the Ninth Circuit Court of appeals in the Mondakota case. Thereafter Mondakota sought a rehearing on its petition for writ of certiorari which was denied. Thus the decision in the Mondakota case was never considered on its merits by an appellate court.

"Counsel for Mondakota concedes that the issues presented by their counterclaims are the identical issues decided by Judge Pray in the Mondakota case, but contend that the doctrine of res judicata should not apply because that case was never ruled on on its merits by an appellate court.

"As a general proposition, the operation of a judgment as res judicata is not

affected by a mere right of appeal where the appeal has not been taken, or by an appeal which never has been perfected 30–A Am.Jur. 'Judgments', Sec. 342.

"A case closely analogous to this case is U. S. vs. Munsingwear [Inc.], 340 U.S. 36 [71 S.Ct. 104, 95 L.Ed. 36]. In that case the government brought a civil action against the defendant for violation of a price fixing regulation. The action was in two counts, the first for an injunction and the second for treble damages. By agreement the second count was held in abeyance pending trial and final determination of the first count. The District Court found that the defendant's prices complied with the regulation, and dismissed the first count, and the government appealed. While the appeal was pending, the commodity involved was decontrolled, and the defendant moved for dismissal of the appeal on the ground that the question had become moot, which motion was granted. Thereafter in the District Court the defendant moved for dismissal of the treble damage count on the ground that the unreversed judgment of the District Court in the injunction count was res judicata of the treble damage count, and the District Court granted the motion. The government appealed upon the same grounds urged by Mondakota here, namely, that because there had been no decision on the merits of the appeal from the judgment on the first count, the doctrine of res judicata did not apply. Likewise, as Mondakota does here, the government in that case urged that because defendant had moved for the dismissal of the first appeal and thus prevented a decision on the merits, it should be estopped to rely on the doctrine of res judicata. The District Court's judgment dismissing the second on the basis of res judicata was affirmed by the Court of Appeals ([8 Cir.] 178 F.2d 204) and by the Supreme Court, thus establishing the law to be that the dismissal of an appeal from a judgment for reasons not going to the merits does not prevent the unreversed judgment from being res judicata. The following statement from the opinion of the Court of Appeals of

the Eighth Circuit in the Munsingwear case, at page 209 of 178 F.2d, is particularly appropriate to this case:

" 'We cannot accept the theory that the conclusiveness of the judgment of the District Court in the injunction action was affected by the reason given by this court for the dismissal of the appeal from that judgment. Appeals are dismissed on many grounds, some due to the fault of the appellants and some to circumstances beyond their control. The logic of making a distinction between dismissals of appeals for mootness and dismissals on other grounds involving no fault of an appellant, escapes us, as does also the logic of impairing the conclusiveness of a judgment of a District Court because an appellate court refuses to entertain an appeal from the judgment. While the appeal is pending, the judgment is not final, but is presumptively correct. When the appeal is dismissed, the judgment, as we understand the law, becomes final and conclusive as between the parties with respect to all issues actually tried and determined.'

"See also Southern Pacific Ry. Co. vs. U. S., 168 U.S. 1 [18 S.Ct. 18, 42 L.Ed. 355], and Johnson Company vs. Wharton, 152 U.S. 252 [14 S.Ct. 608, 38 L.Ed. 429].

"Aside from the question of res judicata, the Court has examined the Mondakota counterclaims in the light of all the evidence which has been submitted. From that examination, it has become apparent to the Court that if it were free to decide the present motion on its merits it would be forced to reach the same decision that Judge Pray reached in the Mondakota case and for the same reasons.

"Furthermore, and without extended discussion, the Court finds that the counterclaims are barred by that portion of Section 93–2607, R.C.M.1947, which provides a two year limitation on actions upon a liability created by statute other than a penalty or forfeiture. As pointed out, the fourth and sixth counterclaims are based upon the Natural Gas Act and the Fifth and Seventh counterclaims are

based on the Sherman Antitrust Act. The conduct causing the alleged injury insofar as Mondakota is concerned commenced, according to the allegations of the counterclaims, prior to December 6, 1941, and its cause of action accrued, according to counterclaimant, not later than April 2, 1949. The counterclaims were not filed until March 10, 1955, long after the two year period of limitation.

"John Wight Counterclaims

"As previously indicated, counsel has confessed the motion to dismiss Wight's first counterclaim and has asserted that he does not press the second counterclaim, so there remains for consideration the third, fourth and fifth counterclaims of John Wight. The third counterclaim alleges that the procuring of the 1939 release, the failure to keep the promises given in consideration for such release, and the bringing of the instant action by Montana Dakota Utilities Co. were all a part of a deliberate course of action on the part of Montana Dakota Utilities Co. to interfere with and destroy Wight's business and ruin his reputation.

"In confessing the motion to dismiss the first counterclaim, Wight's counsel conceded that the bringing of the instant action could not serve as the basis for the malicious prosecution action alleged in the first counterclaim because it has not yet been terminated in Wight's favor. It seems to the Court that it is likewise true that the bringing of the instant action by Montana Dakota Utilities Co. cannot be used to support a charge of a deliberate course of conduct on the part of Montana Dakota Utilities Co. aimed at the destruction of Wight's business until it has been terminated in Wight's favor. Certainly, if Montana Dakota Utilities Co. should win its suit, even if it resulted in the complete destruction of Wight's business, that would not give Wight a cause of action.

"That leaves the procuring of the 1939 release and the failure to fulfill promises given in consideration therefor as the sole basis of the charge of destruction of business. However, it is abundantly clear from Mr. Wight's testimony given in his deposition that no promises were made to him, and that none were broken.

"In his fourth counterclaim, Wight seeks damages for the alleged failure of Montana Dakota Utilities Co. to operate its lines as a common carrier as required by the Leasing Act and the Natural Gas Act, and for allegedly refusing to transport gas at reasonable rates for Wight, Capital Gas Corporation and Mondakota Gas Company, of which corporations Wight was the principal stockholder. The allegations with respect to Capital Gas Corporation are substantially the allegations which were made in the complaint in McClellan, Trustee, etc., John Wight, et al. vs. Montana Dakota Utilities filed in the United States District Court in Minnesota. That case was decided against the plaintiffs, one of whom was John Wight, in McClellan vs. Montana Dakota Utilities Company, 104 F. Supp. 46, affirmed [8 Cir.] 204 F.2d 166, cert. denied 346 U.S. 825 [74 S.Ct. 43, 98 L.Ed. 350]. The latter case is res judicata of the allegations in the fourth counterclaim with reference to Capital Gas Corporation.

"The issues raised by the fourth counterclaim with respect to the alleged failure of Montana Dakota Utilities to ship gas at reasonable rates for Mondakota Gas Company were decided against Mondakota Gas Company in Mondakota Gas Co. vs. Montana Dakota Utilities Co., 103 F.Supp. 666, referred to in the discussion of Mondakota's counterclaims. While Wight was not a party to that action and the doctrine of res judicata would not apply, the doctrine of stare decisis does apply, and under that doctrine this court would be bound to follow the Mondakota decision.

"Furthermore the Court is unable to see how Wight, as the principal stockholder of the two corporations, Capital and Mondakota, can recover for any damages suffered by the corporations. If the corporations did have an action against Montana Dakota Utilities, it was the corporations' action and not the principal stockholder's.

"Finally with respect to the allegations in the fourth counterclaim to the effect that Montana Dakota Utilities refused to transport gas at reasonable rates for John Wight individually, John Wight's testimony in his deposition clearly establishes that no such refusal ever occurred. He testified at page 217 and 218 of his deposition as follows:

" 'Q. Referring to paragraph eight "A", Montana-Dakota Utilities has never refused to transport gas for John Wight?

" 'A. Yes, my original application I made was where I signed for the Montana Eastern and myself personally. But it is my recollection that was around 1929 or 1930.

" 'Q. Let's commence in 1939 after the execution of the release.

" 'A. No, they haven't.

" 'Q. Montana-Dakota Utilities has never refused to transport gas for John Wight?

" 'A. No, because I have never made application to the MDU to transport gas since 1939.

" 'Q. Have we ever refused to produce or purchase gas from you since 1939?

" 'A. As an individual I can't think of any instance right now.'

"John Wight's fifth counterclaim realleges the fourth counterclaim in its entirety, and adds antitrust allegations. In both the McClellan case, supra, and the Mondakota case, supra, violations of the antitrust laws were charged and what has been said above in discussion of the fourth counterclaim with reference to res judicata and stare decisis applies to the fifth counterclaim.

"The Court is further of the opinion that the third, fourth and fifth counterclaims of John Wight are barred by the statute of limitations for the same reasons discussed above in connection with the Mondakota counterclaims.

"For the foregoing reasons

"It Is Ordered that plaintiff's motion to dismiss the first counterclaim of Mondakota Gas Company and the first counterclaim of John Wight be and the same hereby is granted and said counterclaims are hereby dismissed.

"It Is Further Ordered that plaintiff's motion for summary judgment on the second, third, fourth, fifth, sixth and seventh counterclaims of Mondakota Gas Company, and the second, third, fourth and fifth counterclaims of John Wight is granted and all of said counterclaims are hereby ordered dismissed upon the ground that there is no genuine issue as to any material fact in any of said counterclaims and that plaintiff is entitled to judgment of dismissal of said counterclaims as a matter of law.

"Counsel for plaintiff are directed to prepare a judgment in accordance with this order pursuant to the provisions of Rule 11(b) of the Rules of this Court."

Eliminating portions of the premises, the judgment appealed from, as shown by the printed record pages 166 and 167, is as follows:

"The Court having considered the pleadings in the action, * * * ; heard oral argument and considered the briefs of counsel for the parties, found: (1) that plaintiff's motion to dismiss the first counterclaim of Mondakota Gas Company and the first counterclaim of John Wight should be granted; (2) that there is no genuine issue as to any material fact in any of the remaining counterclaims of Mondakota Gas Company and John Wight, and plaintiff is entitled to judgment of dismissal of said counterclaims.

* * * * * *

"It Is Ordered, Adjudged and Decreed that the plaintiff's motion to dismiss the first counterclaim of Mondakota Gas Company and the first counterclaim of John Wight be granted and that these counterclaims be, and they are hereby dismissed without leave to amend.

"It Is Further Ordered, Adjudged and Decreed that the plaintiff's motion for summary judgment as to the second, third, fourth, fifth, sixth and seventh counterclaims of Mondakota

Gas Company and the second, third, fourth and fifth counterclaims of John Wight, be, and they are hereby dismissed, and that final judgment thereon in favor of the plaintiff shall be, and is hereby entered."

It will be noted that the last quoted paragraph of the judgment does not accurately follow the substance of the Judge's Order concerning the motion for summary judgment. The Judge directed a judgment to be entered granting the motion for summary judgment and dismissing the counterclaims upon the ground that there is no genuine issue as to any material fact in the counterclaims.

To conform to Judge Murray's direction as to the judgment, the words "is granted" should be inserted in the judgment in the place of the word "be". This apparent discrepancy seems to be of little consequence and will be regarded as either a mistake of the printer or of appellants in the preparation of the judgment or record as it is evident that both appellants and appellee in their briefs have treated this judgment as one granting summary judgment.

## SCOPE OF THIS APPEAL

It might appear from the "Notice of Appeal" (Record 168), and from "Statement of Points to be Relied Upon by Defendants Mondakota Gas Company, a corporation, and John Wight upon Appeal" (Record 171 & 176), that counsel for the appellants have repudiated their voluntary assurances and statements to the Court below to the effect that they conceded that the first, second, and third counterclaims of Mondakota Gas Company and the first counterclaim of John Wight were vulnerable to the motion. Nowhere in the record does it appear that appellants questioned the accuracy of the statements contained in the first paragraph of the Order and Memorandum of the Court, which it will be noted was dated and signed by Judge Murray on the 3d day of August, 1959, and filed and entered August 4, 1959. The judgment pursuant to said Order and Memorandum was signed the 4th day of September, 1959, and filed and entered September 8, 1959. We must conclude that if said statement of Judge Murray, or any other statement of fact, in his Order and Memorandum was incorrect, appellants' counsel would have called his attention to such error. Failure to do so would be reprehensible and we do not want to be considered as insinuating that counsel was guilty of such conduct. The variance between Judge Murray's Order and Memorandum and the Notice of Appeal and Statements of Points was undoubtedly inadvertently made.

We will therefore consider this as an appeal involving only the judgment as to John Wight counterclaims Nos. three, four, and five, and Mondakota Gas Company counterclaims Nos. four, five, six, and seven. The appeal is so regarded by appellee's counsel who state, on page 2 of their brief, that:

"Appellants pleaded numerous counterclaims, all of which were dismissed by the order of the court below. This appeal concerns the judgment of dismissal on appellee's motion for summary judgment of the fourth, fifth, sixth and seventh counterclaims of appellant Mondakota Gas Company and the third, fourth and fifth counterclaims of appellant John Wight."

And on page 5 of their brief appellee's counsel say:

"Although the notice of appeal and the statement of points to be relied upon attack the judgment of the court below insofar as all of the counterclaims of both appellants are concerned, counsel have stipulated that the only counterclaims involved on this appeal are John Wight counterclaims Nos. 3, 4 and 5 and Mondakota Gas Company counterclaims Nos. 4, 5, 6 and 7."

We find no such stipulation in the record but believe that counsel had reference to the concessions made in the proceedings before Judge Murray.

Our understanding as to the scope of this appeal also finds support in the fact

that the arguments of appellants are not addressed to the first, second and third counterclaims of Mondakota Gas Company and the first and second counterclaims of John Wight.

In their argument counsel for appellants urge, page 15 of their brief, as "Basic Questions" on their appeal, the following:

"(1) Were the issues presented by the counterclaims of the defendants (aside from the first counterclaim), res judicata, by reason of having been previously adjudicated in the Mondakota Case and the McClellan Case.

"(2) Were the counterclaims of the defendants, aside from the first counterclaims, barred by the Statute of Limitations, as provided by Section 93-2607, Revised Codes of Montana, 1947.

"(3) Were the Wight counterclaims barred under the doctrine of stare decisis by reason of the decisions and judgments in the Mondakota and McClellan cases."

Further as to the scope of the appeal, counsel for appellee state, on page 5 of their brief:

"The printed record in this case does not include the complaints in the McClellan and Mondakota cases, copies of which were attached to and made a part of the complaint in the instant case as Exhibits B and C respectively. The appellants do not contend that the court below erred in concluding that the claims asserted in the counterclaims were substantially identical with the claims made in the McClellan and Mondakota cases. To remove any question as to the scope of the appeal on this point counsel have stipulated that no such question is involved on this appeal."

The printed record on appeal does not disclose any such stipulation. However, from the Order and Memorandum of Judge Murray, it appears that such stipulation was made in the proceedings before him as to the issues in the Mondakota case. In the course of his Order and Memorandum the Judge observed:

"Counsel for Mondakota concede that the issues presented by their counterclaims are the identical issues decided by Judge Pray in the Mondakota case, but contend that the doctrine of res judicata should not apply because that case was never ruled on on its merits by an appellate court." (Record 158)

What we have heretofore said concerning the statement contained in the first paragraph of Judge Murray's Order is applicable here. And again, appellants offer no argument to the effect that either of them dispute that the claims asserted in the counterclaims were substantially identical with the claims made in the Mondakota and McClellan cases. The absence of such contentions, when considered with the fact that appellants did not include in the printed record in this case the complaints in the McClellan and Mondakota cases, support us in our conclusion that the appellants conceded that the counterclaims were substantially identical with the claims made in the McClellan and Mondakota cases.

Appellant's arguments are directed only to the following matters:

1. The judgment in the Mondakota case was granted on the conclusion of the trial court that plaintiff had failed to exhaust its administrative remedies. "The merits of the case were not considered and formed no part of the basis of the judgment." Appellants' brief, page 16.

2. We understand that appellants contend, as to the effect of the Mondakota case, that the doctrine of res judicata should not apply because that case was never ruled on on its merits by an appellate court. They say

"The appeal was dismissed because of the failure of the appellant to present a $5.00 filing fee to the Clerk of the Appellate Court within the time prescribed by rule, although

the appeal had been perfected in time,"

and that

"the case finally went off on a technical plea on a rule of procedure which was erroneously applied,"

(Appellants' Brief, pages 16 & 26)

and, therefore, by reason of the dismissal of the appeal, there was no final judgment on the merits.

3. The Statute of Limitations was not a defense.

■ The dismissal of the appeal from the judgment of the District Court on February 25, 1952, in the Mondakota case, did not operate to prevent that judgment from becoming final and from being res judicata. We agree with Judge Murray that the statement from the opinion of the Court of Appeals of the Eighth Circuit in the Munsingwear case, quoted by him in his Order and Memorandum from page 209 of 178 F.2d, is particularly appropriate to this case.

In view of the Supreme Court's disapproval of the action of this Court in dismissing the appeal in the Mondakota case in Parissi v. Telechron, Inc., 349 U.S. 46, 47, 75 S.Ct. 577, 99 L.Ed. 867, it may be said here that the dismissal of said appeal involved no fault of the appellants; especially so in view of the fact that the Supreme Court on October 15, 1952, denied certiorari, 344 U.S. 827, 73 S.Ct. 28, 97 L.Ed. 643. It may also be noted that unlike the situation in Parissi v. Telechron, the appellants here did not timely or otherwise move in the District Court for a nunc pro tunc order according the notice of appeal a filing date as of the date it was originally received by the clerk.

If appellants have cited International Paper Co. v. Maddox, 5 Cir., 203 F.2d 88, and Peckham v. Family Loan Co., 5 Cir., 196 F.2d 838, in support of any of their contentions here, neither of those cases is applicable.

■ The judgment rendered by Judge Pray was a final judgment on the merits and did not go "off on any preliminary, subsidiary, or technical plea or objection."

"A judgment is on the merits when it amounts to a decision as to the respective rights and liabilities of the parties, based on the ultimate fact or state of facts disclosed by the pleadings or evidence, or both, and on which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions. If the case is brought to an issue, heard on evidence submitted pro and con, and decided by the verdict of a jury or the findings of a court, the judgment rendered is on the merits.

"It is not necessary, however, that there should have been a trial. If the judgment is general, and not based on any technical defect or objection, and the parties had a full legal opportunity to be heard on their respective claims and contentions, it is on the merits, although there was no actual hearing or argument on the facts of the case."
—50 C.J.S. Judgments § 627.

"A judgment under Rule 56 goes to the merits and operates in bar of the cause of action, not in abatement."
—Martucci v. Mayer, et al., 3 Cir., 210 F.2d 259, 260.

In the concluding paragraph of his opinion Judge Pray stated: (103 F.Supp. 666, 671, [3])

"It seems clear that in view of the decisions, statutes and regulations considered and accepted by the court the plaintiff has failed to state a cause of action, and being duly advised and good cause appearing therefor, in the opinion of the court the defendant's motion should be granted and the action dismissed and such is the order of the court herein."

The Judge quoted extensively from Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 695, 95 L.Ed. 912, with com-

ments that that case was decisive of the Mondakota case and that certain pertinent statements in the opinion of the Supreme Court had direct application to Mondakota including the following:

" 'Under such circumstances, we conclude, that, since the case involves only issues which a federal court cannot decide and can only refer to a body which also would have no independent jurisdiction to decide, [we] must decline the case forthrightly rather than resort to such improvisation.

**I.** It has been held that the court will not grant relief in the first instance if an adequate administrative remedy is available. It is said to be fundamental to federal regulatory legislation that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' [Citing cases] * * *

"How could the plaintiff expect to establish his cause of action in a federal court if it failed to exhaust its administrative remedies and regulatory requirements to enable it to transact the business described in the complaint? Now the question is, does it appear from the law and authorities cited that such would constitute an indispensable prerequisite to the commencement of an action for judicial relief such as is contemplated by this action? What if no space were found in the pipe lines to satisfy plaintiff's demands, or that defendant be called upon to alter or cancel contracts with others to accommodate plaintiff? Plaintiff suggests that the duty rested upon defendant to make such application to the Secretary, which at least is a partial admission that such a step should have been taken, but the plaintiff knew his own plans and what accommodations would be required from defendant, which information was not available to defendant, consequently in the court's view the duty rested upon plaintiff, as the party chiefly interested, to find out what, if any, space would be available for its use in defendant's pipe lines.

"It appears also to be a fact, as asserted by defendant, that while plaintiff is a natural gas company, under its own statement, as defined in the Natural Gas Act, it 'has never applied for or obtained a certificate of public convenience and necessity under Section 7(c) of the Natural Gas Act, 15 U.S.C.A. § 717f(c), authorizing it to enter the market served

" 'The judgment below is affirmed upon the ground that the petitioner has not established a cause of action.' "

That the judgments in Mondakota and McClellan cases were final judgments on the merits will be easily seen and understood from a reading of the opinions of Judge Pray and Judge Joyce in those cases—the Mondakota case, 103 F.Supp. 666; the McClellan case, 104 F.Supp. 466. In aid of such understanding we quote in the footnote from Judge Pray's opinion.[1]

by Montana-Dakota Utilities Company, or authorizing it to operate any facilities or to transport or ship natural gas to any customer.'

"It is contended that plaintiff never gave defendant information as to the nature of any proposed shipment of gas it wanted to make, or as to quantity or place of origin or destination, or any information as to the proposed maximum daily shipment it desired to make or any other necessary and pertinent facts concerning any gas shipments it was desirous of making, and that no gas was ever tendered defendant, Montana-Dakota Utilities Co., by plaintiff for shipment in any of the former's pipe lines. Plaintiff claims it was unable to do business with defendant because of the alleged existence of unreasonable rates, which had never been tested by plaintiff. Plaintiff could have obtained a certificate of convenience and necessity and also the decision of the Secretary of the Interior as to amount of gas that could be accepted by the pipe line, and then could have made a test of the rates by offering gas for shipment; and, if as a result of the test, it should have determined that the rates were unreasonable, plaintiff could then have applied for an interim rate to continue during the extended period of rate litigation, and thereby could have continued shipments of gas during that period without interruption.

"The court is convinced from the arguments of counsel and authorities cited that the schedule of rates on file by defendant since 1938 were to be accepted as the regularly filed and lawful rates until they were superseded by the new rates that went into effect April 2nd, 1949; the defendant could not alter or change those rates under the statute. 15 U.S.C.A. 717c. It would seem that the Federal Power Commission had no authority to make findings as to the un-

While in view of the foregoing it seems unnecessary to discuss appellants' points concerning the application of the Statute of Limitations, it may be well to state

reasonableness of past rates, and that its authority in this respect is limited solely to the determination of rates to be in force and to apply to future transactions.

"The better reasoning as to interpretation and application of the recent decision of the Supreme Court in Montana-Dakota Utilities Company v. Northwestern Public Service Company, 341 U.S. 246, 71 S.Ct. 692, 695, 95 L.Ed. 912, would seem to require acceptance of that decision as decisive of the instant case. The court has read and re-read that case, and endeavored carefully to analyze the language of that decision, aided by the able arguments of counsel for both parties, and has been unable to find authority for either court or commission to determine reasonableness of past rates. It was held there that plaintiff could 'claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms.'

"In the majority opinion, in the case above cited, the following statement explanatory of the court's decision appears: 'The entire Court is agreed that the judgment rendered by the District Court cannot stand and all agree that it cannot adjudicate the issues that plaintiff tendered to it. We disagree only as to the consequences of the disability. The majority believe the federal court should dismiss the complaint. A minority urges that we should direct the District Court to refer issues to the Federal Power Commission.'

"In the dissenting opinion appears this statement: 'Despite the unqualified statutory declaration that unreasonable rates are unlawful, we think it clear that Congress did not intend either court or Commission to have the power to award reparations on the ground that a properly filed rate or charge has in fact been unreasonably high or low. If that were all the complaint before us showed, we would agree that recovery of damages in a civil action would not be an appropriate remedy, and that the complaint should have been dismissed.'

"There are other pertinent statements in the last quoted decision which seem to have direct application here, such as the following: 'If the court is presented with a case it can decide but some issue is within the competence of an administrative body, in an independent proceeding, to decide, comity and avoidance of conflict as well as other considerations make it proper to refer that issue. But we know of no case where the court has ordered reference of an issue which the administrative body would not itself have jurisdiction to determine in a proceeding for that purpose. The fact that the Congress withheld from the Commission power to grant reparations does not require courts to entertain proceedings they cannot themselves decide .in order indirectly to obtain Commission action which Congress did not allow to be taken directly. There is no indication in the Power Act that that was Congress' intent. * * *

" 'Under such circumstances, we conclude, that, since the case involves only issues which a federal court cannot decide and can only refer to a body which also would have no independent jurisdiction to decide, [we] must decline the case forthrightly rather than resort to such improvisation.

" 'The judgment below is affirmed upon the ground that the petitioner has not established a cause of action.'

"And again from the same source: 'We have seen that that Act (Federal Power Act) does not authorize the Commission to award reparations to those subjected to unreasonble rates. * * * The Power Act, it is true, does give the Commission authority to look into past rates in order to determine whether the Act has been violated. [Citing statutes and cases] But such an inquiry cannot be made the basis for an administrative award of damages to the victims of the violations. Again, the Commission may, as the Government suggests, have power under the omnibus provisions of § 309 to vacate its approval of a rate when approval has been obtained by fraud. [Citing statute] But this does not authorize the Commission to fix rate orders retrospectively. The Commission may establish rates only "to be thereafter observed" and in force.' [Citing statute]

"Another quotation from the majority opinion reads: 'But the problem is whether it is open to the courts to determine what the reasonable rates during the past should have been. * * * A court may think a different level more reasonable. But the prescription of the statute is a standard for the Commission to apply and, independently of Commission action, creates no right which courts may enforce.'

■ It seems clear that in view of the decisions, statutes and regulations considered and accepted by the court the

that we are in accord with Judge Murray's views to the effect that the third, fourth and fifth counterclaims of John Wight and the Mondakota counterclaims are barred by the Statute of Limitations. Section 93–2607 R.C.M.1947. On this question see McClellan v. Montana-Dakota Utilities Co., 8 Cir., 204 F.2d 166, 168.

Judgment affirmed.